**Carl L. FARLEY, Appellant,**

v.

**BENEFIT TRUST LIFE INSURANCE COMPANY, Appellee.**

**Carl L. FARLEY, Appellee,**

v.

**BENEFIT TRUST LIFE INSURANCE COMPANY, Appellant.**

**Nos. 91–3751, 91–3752.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1992.

Decided Nov. 10, 1992.

Rehearing and Rehearing En Banc Denied Dec. 22, 1992.

---

Stephen Hiotis, St. Louis, Mo., argued (Richard A. Gartner, Stephen C. Hiotis and Becky R. Eggmann, on the brief), for appellant/cross-appellee.

Keith Rabenberg, St. Louis, Mo., argued (Clark H. Cole and Keith A. Rabenberg, on the brief), for appellee/cross-appellant.

Before JOHN R. GIBSON, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

In 1987, Judith Farley had a lesion removed from her scalp; the lesion was diagnosed as a malignant melanoma, or skin cancer. The following year, evaluation revealed that the cancer had spread; tumors were present in her lung and her brain stem. Mrs. Farley's husband, plaintiff Carl Farley, was employed by Thiel Tool and Engineering at the time of these events. He had group health insurance through his employer with Benefit Trust Life Insurance Company; Mrs. Farley was covered under his policy.

Mrs. Farley's primary physician referred her to a cancer specialist at the Washington University School of Medicine. The cancer specialist recommended that she receive high-dose chemotherapy accompanied by an autologous bone marrow transplant, a procedure in which the patient's bone marrow in the area of chemotherapy is removed temporarily in order to limit the damage to bone cells from the chemotherapy and reintroduced into the patient's body a few days later. The cancer specialist then wrote to Benefit Trust, asking if Mrs. Farley's coverage would include the treatment he was recommending for her. He included with his letter some preliminary results from a study of the same treatment on other cancer patients. Benefit Trust responded that its current information indicated that such treatment for the type of cancer Mrs. Farley had was considered "investigational/experimental." Benefit Trust further stated that Mrs. Farley's health coverage excluded "benefits for treatments that are experimental, educational, investigational or ... furnished in connection with medical or other research."

The Farleys decided to proceed with the treatment nonetheless. In the fall of 1988, Mrs. Farley underwent high-dose chemo-

therapy accompanied by an autologous bone marrow transplant. She died six months later.

After Mrs. Farley's treatment, Mr. Farley had submitted to Benefit Trust various bills relating to her hospitalization. Benefit Trust subsequently denied payment, asserting that the treatment was "classed as experimental, educational, informational, or given in conjunction with research" and therefore not covered under the Farleys' policy.

Mr. Farley then sued Benefit Trust in state court, alleging various common-law causes of action—breach of contract, bad faith, outrage, and unfair claim settlement practices. Benefit Trust removed the case to federal court, where the trial court dismissed the common-law claims but allowed Mr. Farley to amend to add a cause of action under the Employee Retirement Income Security Act, *see* 29 U.S.C. §§ 1001–1461, since the health insurance policy was an employee welfare benefit plan under federal law, *see* 29 U.S.C. § 1002(1)(A), § 1003(a)(1).

After a three-day bench trial and the submission of posttrial briefs, the trial court found that the original policy had been amended to add provisions describing "medically necessary" treatment and limiting benefits only to treatment considered "medically necessary" under that description; that the description contained five criteria for "medically necessary" treatment; that the treatment given to Mrs. Farley met three of those criteria; and that the treatment failed to meet two of those criteria. The trial court therefore found for Benefit Trust and dismissed Mr. Farley's claim with prejudice.

Both parties appeal. Mr. Farley appeals the trial court's findings that the policy was amended to include the provisions as to "medically necessary" treatment, that he had the burden of proof on the question of whether Mrs. Farley's treatment was "medically necessary," and that Mrs. Farley's treatment failed to meet two of the relevant criteria. Benefit Trust appeals the trial court's findings that Mrs. Farley's treatment met three of the relevant crite-

ria. We affirm the trial court as to all issues.

## I.

■ The provisions defining "medically necessary" treatment and limiting benefits only to such treatment are included in a document styled "Amendment Number 8." In April, 1987, this document was sent by Benefit Trust to Thiel Tool, Mr. Farley's employer, along with two other documents, styled "Amendment Number 6" and "Amendment Number 7." The letter accompanying those documents indicates that all three are "Amendments to your Contracts showing revisions to the Schedule of Benefits, as well as the addition of medical benefits and provisions, to be effective as of May 1, 1987." The letter asks Thiel Tool to "accept by signing where indicated, keep the originals to be attached to your Master Contracts and return the copy to us for our files."

On the last page of Amendment Number 6 is a signature line signed by Arnold Munson, assistant secretary, for Benefit Trust. Also included on the last page of Amendment Number 6 are signature lines for an authorized agent of Benefit Trust and for Thiel Tool. There is no equivalent text on Amendment Number 7 or Amendment Number 8. It is apparently undisputed that a representative of Thiel Tool signed and returned only Amendment Number 6. Both Benefit Trust and Thiel Tool, however, kept all three amendments with their policy documents; in addition, the language from Amendment Number 8 was included in riders attached to a Certificate of Group Insurance distributed by Benefit Trust to employees of Thiel Tool in April, 1988.

At trial, Mr. Farley argued that because the endorsements appear only on Amendment Number 6, Amendment Number 8 never became part of the policy. Benefit Trust argued that because Amendment Number 6 refers to Amendment Number 8, the endorsements apply to Amendment Number 8 as well. The trial court found that Amendment Number 6 had been properly added to the policy. The trial court further found that Amendment Number 6

refers to Amendment Number 8 but does not specifically direct that Amendment Number 8 be added to or incorporated into the insurance contract or that it replace another provision of the insurance contract (the reference to Amendment Number 8 appears in a sentence that includes a list of riders and forms associated with Amendment Number 6, but the sentence has no verb in it). Finding, therefore, that the contract was "incomplete," the trial court turned to extrinsic evidence to determine whether the parties had intended to add the provisions of Amendment Number 8 to the insurance contract. Citing testimony that the three amendments had been sent to Thiel Tool as a package, that they had been considered and stored collectively by the parties, and that the "medically necessary" language was included in a subsequent description of policy provisions, the trial court found that the parties had intended to incorporate Amendment Number 8 as part of the insurance contract and that, as a matter of law, it had indeed been so incorporated.

On appeal, Mr. Farley argues that the insurance contract specifies the amendment procedure to be used, that the procedure specified was not followed, and therefore that any alleged amendment was invalid under the contract. Mr. Farley further argues that the trial court should not have used extrinsic evidence to determine whether the insurance contract was amended in accordance with the procedure specified, first, because there was no ambiguity in the contract itself and, second, because the use of extrinsic evidence amounted to an oral modification of the contract in contravention of principles governing insurance plans covered by ERISA. Finally, Mr. Farley argues that, in any case, the proof was insufficient to show that the language in issue was added to the policy.

The insurance contract states, "This Contract with the application of the Employer or Assured and any attached endorsements, amendments and riders is the entire contract.... No change in this Contract will be valid until approved by a Company officer. This approval must be endorsed on or attached to this Contract." *See* poli-cy, General Provisions, p. 209. The trial court found that this procedure had been followed as to Amendment Number 6. For two reasons, we agree with the trial court that Amendment Number 8 became part of the insurance contract at the same time as Amendment Number 6.

First, it is undisputed that Amendment Number 8 was sent to Thiel Tool as part of a package that also included Amendment Number 6 and Amendment Number 7. Because Amendment Number 6 was properly endorsed, we find that there was substantial compliance with the contract requirements for endorsement as to Amendment Number 7 and Amendment Number 8. *See, e.g., Aronson v. Servus Rubber, Division of Chromalloy,* 730 F.2d 12, 15–16 (1st Cir.1984), *cert. denied,* 469 U.S. 1017, 105 S.Ct. 431, 83 L.Ed.2d 357 (1984); *see also Huber v. Casablanca Industries, Inc.,* 916 F.2d 85, 105–06 (3d Cir.1990).

In the alternative, we construe the trial court's opinion as stating that because the reference in Amendment Number 6 to Amendment Number 8 is unclear, the contract is ambiguous as to which provisions are to be included. Under such circumstances, extrinsic evidence is admissible to determine the meaning of the contract. *See, e.g., Landro v. Glendenning Motorways, Inc.,* 625 F.2d 1344, 1353 (8th Cir.1980); *see also Restatement (Second) of Contracts* § 214(c) at 132–33, comment b at 133 (1981). This principle is applicable even to contracts governed by ERISA; the meaning derived does not amount to an oral modification but is instead a clarification of provisions already in effect. *See, e.g., Landro,* 625 F.2d at 1354. In light of the extrinsic evidence presented, we do not consider clearly erroneous the trial court's factual finding that the intention of the parties was to include Amendment Number 8 in the insurance contract. Concomitantly, we agree with the trial court's conclusion that the proof was sufficient on this threshold issue; we therefore affirm the trial court as to these initial questions.

## II.

In its opinion, the trial court held that Mr. Farley had failed to show that Mrs.

Farley's treatment met two of the criteria for "medically necessary" procedures under the policy; the trial court held, therefore, that Mrs. Farley was not entitled to coverage for that treatment. The trial court's only reference to why Mr. Farley had the burden of proof is in a footnote stating that Mr. Farley had the burden of showing that Benefit Trust "breached its obligation to provide benefits" due to him.

■ On appeal, Mr. Farley argues that the burden of proof on issues related to the "medically necessary" provisions should have been on Benefit Trust, not on him. Mr. Farley argues, first, that the "medically necessary" language is essentially an exclusion and that under common-law insurance principles, the insurer, not the policyholder, traditionally has the burden on exclusions. In a related vein, Mr. Farley argues that Benefit Trust actually pleaded the "medically necessary" language as an affirmative defense and, therefore, that Benefit Trust should be required to bear the burden, essentially because Benefit Trust adopted that burden by so pleading.

Benefit Trust responds that the burden of proof was properly placed and that, even if not, sufficient evidence was presented for Benefit Trust to have won, in any event. Benefit Trust further argues that because the case arises under ERISA, and because the statute puts the burden on the plaintiff, traditional insurance law principles are inapplicable. Finally, Benefit Trust argues that it did not plead the "medically necessary" language as an affirmative defense but only as an additional defense, i.e., an additional reason why it denied liability.

Suit under ERISA is authorized by 29 U.S.C. § 1132(a)(1)(B), which allows a participant or beneficiary to sue "to recover benefits due to him under the terms of his plan." The parties do not dispute that Mrs. Farley's disease was included under the coverage benefits of the policy. They differ in their characterizations of the "medically necessary" language; Mr. Farley alleges that it is an exclusion, Benefit Trust that it is a clarifying definition associated with benefits.

We have looked at the policy. The original text states that "[b]enefits are payable for medical expense ... for the necessary care" of a covered illness. See policy, Comprehensive Medical Benefit Section, p. 51. Amendment Number 8 states that "[b]enefits will be paid only for 'Medically Necessary' care and treatment of Sickness or Injury." See policy, Amendment Number 8.

In our view, the effect of the text of Amendment Number 8 is to change the initial description of medical expense covered from that for "necessary care" to that for " 'Medically Necessary' care and treatment." In either case, however, in our view, the language is tied to the benefits section of the policy, see policy, Benefits, p. 51, rather than to the exclusions section, see policy, Exclusions, p. 54. The exclusions section does state that "No Benefits are paid for ... service or supplies not required for the Covered Condition," see id.; however, we construe this merely as a repetition of the benefits description as payable only for necessary (or, as amended, medically necessary) expense. We therefore find it reasonable to construe the trial court's statement as a declaration that the language at issue is governed by the benefits section rather than by the exclusions section. Accordingly, we agree that it was Mr. Farley's burden to show that he was entitled to the "benefits ... under the terms of his plan," see 29 U.S.C. § 1132(a)(1)(B).

■ We do not find persuasive Mr. Farley's argument that Benefit Trust pleaded, and therefore adopted the burden of proving, the issue of "medically necessary" treatment. While it is true that an insurer's contention that a loss suffered is "excepted by the policy's terms" is generally regarded as an affirmative defense under the pleading requirements of the federal rules, see 5 C. Wright and A. Miller, *Federal Practice and Procedure: Civil* 2d § 1271 at 432–34 (1990), we believe that the controlling factor is the trial court's determination that the "medically necessary" language was tied to the plaintiff's burden of proving covered benefits, and that Bene-

fit Trust should not be penalized for pleading "matter that technically may not be an affirmative defense," *see id.* § 1271 at 431. The trial court's allocation of the burden of proof is therefore affirmed.

### III.

The insurance contract defines "medically necessary" treatment as "drugs, therapies or other treatments that are required and appropriate care for the Sickness or the Injury; and that are given in accordance with generally accepted principles of medical practice in the U.S. at the time furnished; and that are approved for reimbursement by the Health Care Financing Administration [the federal agency that has the responsibility for approving payments for Medicare patients]; and that are not experimental, educational or investigational; and that are not furnished in connection with medical or other research." *See* policy, Amendment Number 8. The trial court found that Mr. Farley had failed in his burden of proof as to whether the treatment was "given in accordance with generally accepted principles of medical practice" and as to whether the treatment was "approved for reimbursement by the Health Care Financing Administration," *see id.*

On appeal, Mr. Farley seems to argue, as a threshold issue, that Benefit Trust may not enforce the two provisions on which the trial court held that he had failed in his burden of proof, since neither of these provisions was specifically referred to in Benefit Trust's letters to him stating the reasons for denial of benefits. He also argues, however, that the trial court incorrectly interpreted the provisions and therefore that the trial court's findings in reference to them are incorrect. Finally, Mr. Farley argues that the requirement of HCFA approval is too vague to be enforceable.

■ Mr. Farley's arguments on the question of whether Benefit Trust may enforce all of the contract provisions are threefold. In his opening brief, he essentially argues, first, that Benefit Trust waived its right to enforce certain provisions of the policy by not specifying them in its letters denying coverage and, second, that Benefit Trust should be estopped from enforcing those provisions because of Mr. Farley's reliance on the assumption that the grounds stated in denying coverage were the only ones applicable. The trial court rejected both of these arguments. In his reply brief, Mr. Farley offers the additional argument that case law in ERISA matters restricts judicial review of denials of coverage to a consideration only of the factors specified by an insurer as dispositive of its decision to deny coverage.

Mr. Farley's waiver argument may be shortly dealt with. A waiver is "a voluntary and intentional relinquishment of a known right." J. Calamari and J. Perillo, *The Law of Contracts* § 11–29(c) at 491 (3d ed. 1987). Even assuming that a waiver of policy provisions could be asserted in an ERISA case, a point we do not decide, we agree with the trial court that nothing in Benefit Trust's letters expresses any intention to surrender its right to enforce applicable provisions of the policy other than the ones cited in those letters. Nor has Mr. Farley offered any other evidence of such an intention on the part of Benefit Trust. We therefore affirm the trial court on this question.

■ The principle of estoppel declares that a party who makes a representation that misleads another person, who then reasonably relies on that representation to his detriment, may not deny that representation. *See id.* § 11–29(b) at 489–90. In its opinion, the trial court stated that Mr. Farley had offered no evidence of his assertion that he had relied on the assumption that the factors cited in the letters from Benefit Trust were the only ones available as a basis for denying coverage. He points to none on appeal. This is not a case where Benefit Trust induced Mr. Farley to go ahead with the treatment recommended for Mrs. Farley by suggesting that the treatment might be covered. On the contrary, it is undisputed that Benefit Trust denied coverage in its letter of July, 1988, and that the Farleys proceeded with the treatment nonetheless. Under these circumstances,

we agree with the trial court that Benefit Trust is not estopped by equitable principles from enforcing any applicable provisions of the policy.

■ Mr. Farley's final argument is a more interesting one. It is based not on equitable principles but on case law apparently restricting the scope of judicial review of certain denials of coverage by employee welfare plans governed by ERISA. We can find no hint of this argument in the record of proceedings in the trial court; nonetheless, we address it in the interest of thoroughness.

Challenges to a denial of benefits under 29 U.S.C. § 1132(a)(1)(B) are reviewed *de novo* unless the employee welfare plan gives the insurer the discretion "to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). It is apparently undisputed that Benefit Trust has no such discretion under the terms of the plan at issue in this case. We therefore turn to a consideration of the scope of *de novo* review.

Most of the cases addressing this question involve denials of coverage where, upon judicial review, the beneficiary seeks to present evidence to the court that was not presented to the party denying coverage. *See, e.g., Davidson v. Prudential Insurance Co.*, 953 F.2d 1093, 1095 (8th Cir.1992); *see also Luby v. Teamsters Health, Welfare, and Pension Trust Funds*, 944 F.2d 1176, 1184–85 (3d Cir. 1991), and *Perry v. Simplicity Engineering*, 900 F.2d 963, 965 (6th Cir.1990).

Mr. Farley has cited no authority, and we have found none, for the proposition that a court reviewing a denial of coverage may consider only those policy provisions specified by an insurer as the basis of denial of coverage when other policy provisions clearly may also be a basis for such a denial. The practical effect of such a rule would be to permit the oral modification of employee welfare plans governed by ERISA, a result manifestly in conflict with the intent of the statute and with the case law governing it. *See, e.g., Dardaganis v.*

*Grace Capital, Inc.*, 889 F.2d 1237, 1241 (2d Cir.1989); *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290, 1296, 1297 n. 44 (5th Cir. 1989); *Straub v. Western Union Telegraph Co.*, 851 F.2d 1262, 1265–66 (10th Cir.1988); *Cleary v. Graphic Communications International Union Supplemental Retirement and Disability Fund*, 841 F.2d 444, 447–48 (1st Cir.1988); and *Nachwalter v. Christie*, 805 F.2d 956, 960–61 (11th Cir. 1986); *see also Moon v. American Home Assurance Co.*, 888 F.2d 86, 89 (11th Cir. 1989).

Neither *Oldenburger v. Central States Southeast and Southwest Areas Teamster Pension Fund*, 934 F.2d 171 (8th Cir.1991), nor *Perry*, 900 F.2d at 963, the only authorities cited by Mr. Farley, is to the contrary. In *Oldenburger*, review was under an arbitrary and capricious standard and therefore required deference to the plan trustees' conclusions about conflicting factual evidence. *See Oldenburger*, 934 F.2d at 174. Those circumstances are not present in Mr. Farley's case. In *Perry*, the issue was not whether judicial review could include consideration of contract provisions present but not cited as a basis for denial of coverage but, instead, whether an employee seeking to establish disability could present to the court evidence that he had not submitted to the party denying coverage. *See Perry*, 900 F.2d at 965–66. Those circumstances are not present in Mr. Farley's case. We therefore hold that the trial court's consideration of all of the policy provisions was proper in this case and turn to an evaluation of the trial court's conclusions in construing the provisions of the policy.

Where interpretation of a contract requires "a choice among reasonable inferences to be drawn from extrinsic evidence," the question is one of fact. *See Restatement (Second) of Contracts* § 212(2) at 125, comment e at 128 (1981). In this case, of course, the trial court was the trier of fact.

■ In its opinion, the trial court summarizes the principles that it used in deciding what the relevant language as to each criterion meant, reviews the evidence pres-

ented as to each criterion, and then states its conclusion that Mr. Farley failed to present enough evidence to prevail on the two criteria at issue here. On appeal, Mr. Farley offers various criticisms of the trial court's findings and cites various cases interpreting similar policy language. All of these criticisms are basically a contention that the trial court's factual findings are wrong. We see nothing, however, that leads us to believe that the trial court's findings should be reversed as clearly erroneous. Nor do we consider the language of any of the criteria so vague as to be ambiguous or unenforceable. We therefore affirm the trial court on its rulings against Mr. Farley as to the two criteria at issue.

### IV.

 The trial court found that Mr. Farley had met his burden of proof as to whether the treatment was "required and appropriate care" for Mrs. Farley's disease, as to whether the treatment was "experimental, educational or investigational," and as to whether the treatment was "furnished in connection with medical or other research." *See* policy, Amendment Number 8. Benefit Trust argues that the trial court's findings in reference to these criteria are incorrect.

The trial court's summary of the principles it used in interpreting the above language and its review of the evidence presented are more thorough as to these three criteria than as to the previous two. We see nothing in Benefit Trust's argument that leads us to believe that the trial court's findings as to these three criteria should be reversed as clearly erroneous. We therefore affirm the trial court on its rulings against Benefit Trust as to these three criteria.

### V.

For the reasons stated, the judgment of the trial court is affirmed.