Ann E. BUBLITZ and Dorothy A. Pierce, Individually and on Behalf of Themselves and All Persons Similarly Situated, Plaintiffs,

v.

E.I. duPONT de NEMOURS AND COMPANY and Pioneer Hi–Bred International, Inc., Defendants.

Jeanne Foster, Plaintiff,

v.

E.I. duPont de Nemours and Company and Pioneer Hi–Bred International, Inc., Defendants.

William Pennington, Plaintiff,

v.

E.I. duPont de Nemours and Company and Pioneer Hi–Bred International, Inc., Defendants.

Nos. 4–00–CV–90247, 4:00–CV–90286, 4:00–CV–90375.

United States District Court, S.D. Iowa, Central Division.

Nov. 5, 2001.

 

Michael Thrall, Frank B. Harty, Des Moines, IA, for Plaintiffs.

Michael A. Giudicessi, Des Moines, IA, John B. Gordon, Minneapolis, MN, for Defendants.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

The Court has before it Defendants' Motion for Partial Summary Judgment. In their motion, Defendants request summary judgment with respect to two aspects of Plaintiffs' First Amended Recast and Substituted Complaint: (1) that the Severance Committee has the power to review the reasonableness and good faith of a Plan Participant's statement; and (2) that changes to one or all of Pioneer's compensation, bonus, or benefit plans which were made prior to the merger on October 1, 1999 did not trigger the conclusive presumptions of "Stated Good Reason" under the Plan. Plaintiffs resist on various grounds. For the reasons set forth below, the Court grants Defendants' motion in its entirety.

## I. BACKGROUND

This is a class action involving a benefit plan that is covered by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. The Plaintiffs are a group of current and former executives of Pioneer Hi–Bred International, Inc. ("Pioneer"). They are suing Pioneer and the company that took over Pioneer, E.I. duPont de Nemours and Company ("DuPont"). In their First Amended Recast and Substituted Complaint, Plaintiffs allege four counts: Count I is a claim for enforcement and declaration of plan benefits against Pioneer and DuPont; Count II is a breach of fiduciary claim against Pioneer and DuPont; Count III is a claim

against DuPont for interference with protected rights; and Count IV is an equitable relief claim against Pioneer and DuPont asking the Court to toll the three year period during which participants are entitled to exercise their rights under the Plan for the pendency of this action.

The benefit plan at issue is called the Change in Control Severance Compensation Plan for Management Employees ("Plan"). Essentially, the Plan provides that certain management-level employees of Pioneer who are "Participants" in the Plan are entitled to specified "Severance Benefits" if they experience an "Involuntary Termination of Employment" within three years after a "Change in Control." "Involuntary Termination of Employment" is defined in relevant part as "the termination of employment of a Participant by the Company other than Termination for Cause, [or] the resignation or retirement of a Participant for Stated Good Reason...." Plan § 2.1(k).

At issue in the current motion is the interpretation of the term "Stated Good Reason." The Plan defines "Stated Good Reason" as follows: "Stated Good Reason" means a written determination by a Participant that he reasonably and in good faith cannot continue to fulfill the responsibilities for which he was employed. Plan § 2.1(t). The Plan then goes on to set forth five specific circumstances under which the Participant's determination will be "conclusively presumed" to be "reasonable and in good faith" and thus constitute Stated Good Reason:

The Participant's determination will be conclusively presumed to be reasonable and in good faith if, without the Participant's express written consent, the Company

(a) reduces the Participant's base salary or rate of compensation as in effect immediately prior to the

Change in Control, or as the same may have been increased thereafter,

(b) fails to continue any bonus plans in which the Participant was entitled to participate immediately prior to the Change in Control, substantially in the form then in effect,

(c) fails to continue in effect any benefit or compensation plan in which the Participant is participating immediately prior to the Change in Control (or plans providing substantially similar benefits),

(d) assigns to the Participant any duties inconsistent with the Participant's duties, responsibilities or status immediately prior to the Change in Control, or changes the Participant's reporting responsibilities, titles or offices, or

(e) requires the Participant to change the location of his job or office, so that the Participant will be based at a location more than thirty (30) miles distant by public highway from the location of his job or office immediately prior to the Change in Control.

Plan § 2.1(t). The parties disagree over the meanings of "Stated Good Reason" and "Change in Control."

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." An issue is "genuine," "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986). A fact is "material" if the dispute over it might affect the outcome of the suit under the governing law. *Id.* In order to survive a motion for summary judgment, the nonmoving party must present enough evidence for a reasonable jury to return a verdict in his or her favor. *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505.

On a motion for summary judgment, the Court is required to "view the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences." *United States v. City of Columbia,* 914 F.2d 151, 153 (8th Cir.1990). The Court does not weigh the evidence or make credibility determinations. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. The Court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. *Id.*

## III. DISCUSSION

Defendants request summary judgment with respect to two aspects of Count I of Plaintiffs' First Amended Recast and Substituted Complaint. First, Defendants argue that each Plan Participant is not the sole arbiter of whether Stated Good Reason exists and does not have sole discretion to "pull his or her own chute," as Plaintiffs contend. Rather, Defendants argue, the Severance Committee has the power to review the reasonableness and good faith of a participant's statement. Second, Defendants argue that the changes to Pioneer's compensation, bonus, or benefit plans that were made prior to the merger on October 1, 1999 did not trigger the conclusive presumptions of Stated Good Reason under the Plan. They argue that these changes could not have triggered the conclusive presumptions because they occurred prior to the Change of Control as that term is defined in the Plan. Plaintiffs resist Defendants' requests on various grounds.

### A. The Severance Committee's Power to Review the Reasonableness and Good Faith of a Participant's Statement

Plaintiffs claim that a Plan Participant's statement "that he reasonably and in good faith cannot continue to fulfill the responsibilities for which he was employed" is intended to be a totally subjective determination. They state that this determination is by design, intention, and historical interpretation a "hair trigger." It is the Plaintiffs' position that the Severance Committee has no right to review the reasonableness and good faith of a Participant's statement.

#### 1. Discretionary Authority

■ Plaintiffs argue that the Plan does not grant the Severance Committee any discretionary authority to review the reasonableness and good faith of a Participant's statement. They argue that without explicit discretion-granting language, the Severance Committee has no authority to review a Participant's statement. Plaintiffs also argue that the Plan prohibits Defendants' attempt to effectively amend it, that the Severance Committee's responsibilities under the Plan are merely administrative, and that the Defendants' attempt to secure discretionary authority should be rejected where DuPont controls the Severance Committee and the Plan is unfunded.

Plaintiffs' argument that Defendants are attempting to invoke discretionary authority is misguided. Defendants admit that the Plan contains no discretion-granting language. However, they maintain that the Severance Committee still has the power to make a determination under the Plan, even though that determination will then be subject to a de novo review. The Court agrees. Whether a plan administrator or fiduciary has discretionary authority only relates to whether the reviewing court

is required to apply the abuse of discretion standard as opposed to the de novo standard. It does not relate to whether the plan administrator or fiduciary has any power to make a determination under the plan. In other words, the benefit-determination issue and the standard-of-review issue are distinct concepts under ERISA.

In *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Court recognized that "the validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue." The Court held that "a denial of benefits challenged under § 1332(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* The import of that holding is that while a plan administrator or fiduciary may interpret a term in a plan to deny a participant benefits, the reviewing court will give no deference to that interpretation unless the plan gives the plan administrator or fiduciary discretionary authority to interpret it. The existence or nonexistence of discretion-granting language goes not to the ability of a plan administrator or fiduciary to interpret the plan or make a determination under the plan, but rather to the weight a reviewing court must give that interpretation or determination.

This distinction is evident in *Walke v. Group Long Term Disability Ins.,* 256 F.3d 835 (8th Cir.2001). In *Walke,* the parties disagreed over whether the phrase "submits satisfactory proof of Total Disability to us" amounted to discretion-granting language. *Id.* at 839. The district court found that it did provide the defendant with some discretion and reviewed its determination under the abuse of discretion standard. *Id.* at 840. Under this standard the district court upheld the

defendant's determination, finding no evidence to support the contrary. *Id.* The Eighth Circuit disagreed with the district court on the standard to be applied, and applied the de novo standard after concluding that the phrase did not amount to discretion-granting language. *Id.* The Eighth Circuit then proceeded to review the defendant's determination under that more rigorous standard and agree with the district court on the conclusion to deny benefits. *Id.* at 840–41. This exemplifies how the determination and the review of the determination are two separate processes. Plaintiffs' interpretation of the discretionary authority cases collapses these two processes into one-concluding that if a plan administrator or fiduciary has no discretion in its interpretation of or determination under a plan, then it has no power to interpret or make a determination under the plan at all.

Plaintiffs' other arguments concerning discretionary authority are equally misguided. Defendants are not attempting to amend the Plan to give the Severance Committee broad discretionary authority. Nor is the Severance Committee's responsibilities under Plan relevant to its lack of discretionary authority. Finally, whether DuPont controls the Severance Committee and whether the Plan is unfunded are also irrelevant; those issues pertain to the abuse of discretion standard of review. *See Firestone,* 489 U.S. at 115, 109 S.Ct. 948.

## 2. Extrinsic Evidence

Plaintiffs also argue that extrinsic evidence shows that the Plan was not intended to grant to the Severance Committee the authority to review the reasonableness and good faith of a Participant's statement. In their resistance to Defendants' motion, Plaintiffs discuss Pioneer's past conduct and historical interpretation of Stated

Good Reason. They cite to a "Blue Book," which is a collected history of the Plan put together by Pioneer. They also cite to deposition testimony from several high ranking Pioneer executives. This evidence demonstrates that some key individuals, including some of Pioneer's counsel, thought Stated Good Reason was intended to be a hair trigger, or totally subjective determination on the part of the Plan Participant.

■ Plaintiffs's attempted use of extrinsic evidence is improper though. Extrinsic evidence is generally not admissible to aid in the interpretation of an ERISA plan unless the plan is ambiguous. *See Barker v. Ceridian Corp.*, 122 F.3d 628, 633 (8th Cir.1997); *Jensen v. SIPCO, Inc.*, 38 F.3d 945, 950 (8th Cir.1994); *Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653, 657 (8th Cir.1992). The steps in interpreting an ERISA plan have been outlined by the Eighth Circuit as follows:

> That intent [of the settlor] is first sought by careful examination of the trust clause in question, giving the words in that clause their ordinary meanings. If the construction question cannot be resolved by reference to the clause alone, the court will examine the entire trust instrument to determine the creator's intent and purposes.... The third step becomes necessary when the intent or meaning of the settlor ... cannot be determined by reference to the provisions of the trust instrument itself. Extrinsic evidence will be admitted by the court to assist it in determining the meaning and effect of the particular clause.

*Jensen*, 38 F.3d at 950 (quotation omitted). Thus, it is only where the meaning of an ERISA plan cannot be gleaned from the disputed provision itself or the plan as a whole that extrinsic evidence is admissible.

■ The Plan is not patently ambiguous. Black's Law Dictionary defines pat-

ent ambiguity as "[a]n ambiguity that clearly appears on the face of a document, arising from the language itself...." Black's Law Dictionary (7th Ed.). The disputed phrase reads: "Stated Good Reason" means a written determination by a Participant that he reasonably and in good faith cannot continue to fulfill the responsibilities for which he was employed. Plan § 2.1(t). While the Court cannot say from a mere reading of this phrase alone that no ambiguity exists, as discussed *infra*, the rest of the plan document makes the meaning of the phrase clear.

■ Nor are the Plaintiffs properly attempting to establish a latent ambiguity. Black's Law Dictionary defines latent ambiguity as "an ambiguity that does not readily appear in the language of a document, but instead arises from a collateral matter when the document's terms are applied or executed.... Black's Law Dictionary (7th Ed.)." The real thrust of Plaintiffs' argument concerning extrinsic evidence is that they may use it to demonstrate that the Plan is latently ambiguous.

Plaintiffs rely on the Eighth Circuit's decision in *Landro v. Glendenning Motorways, Inc.*, 625 F.2d 1344 (8th Cir.1980). In *Landro*, the plaintiffs were all employees of Glendenning Motorways, Inc. ("Glendenning"); before that they were all employees of Moland Brothers Trucking, Inc. ("Moland"), which was bought out by Glendenning. *Id.* at 1346. The main issue was whether the plaintiffs were entitled to credit toward their pensions under the Glendenning pension plan for the years they worked for Moland. *Id.* Using extrinsic evidence, the district court had determined that the plan was silent or ambiguous on the question of credit for years of service with a predecessor employer like Moland. *Id.* at 1353. The defendants argued that the district court erred in look-

ing to extrinsic evidence, and the Eighth Circuit disagreed. *Id.*

The Eighth Circuit held as follows:

While is is true that the Plan by its terms allowed credited service only for periods of "employment by Glendenning," it nowhere excluded the possibility that periods of employment by predecessor employers like Moland were meant to be included within the definition of "credited service" as periods of "employment by Glendenning." The district court properly considered evidence extrinsic to the Plan itself for the purpose of determining whether it was open to this construction whether, in effect, the Plan was *latently ambiguous* on this point.

*Id.* (emphasis added). It concluded that "[t]he extrinsic evidence considered by the district court demonstrated that in fact the Plan could be construed as including periods of service with Moland as periods of service with Glendenning." *Landro,* 625 F.2d at 1353. The extrinsic evidence showed that defendants had acted as though they would give credit for years of service with Moland and even said as much when asked. *Id.*

The Plaintiffs are not attempting to use extrinsic evidence for the same purpose as the defendants used it for in *Landro.* In *Landro,* the extrinsic evidence was used to demonstrate that the plan was silent as to whether "employment by Glendenning" included employment by employers that Glendenning bought out. *Id.* In this case, at least from looking at the Plan as a whole, the Plan is not silent on the issue of whether the Severance Committee has the power to review the reasonableness and good faith of a Plan Participant's decision. As will be shown *infra,* the Plan is clear that the Severance Committee does have that power. And Plaintiffs are attempting to use extrinsic evidence to contradict that interpretation. Such a use of extrinsic

evidence is impermissible. *See McPeek v. Beatrice Co.,* 936 F.Supp. 618, 630 n. 14 (N.D.Iowa 1996) (stating " 'extrinsic evidence may not be used to create an ambiguity in a pension or welfare agreement subject to ERISA' ") (quoting *Central States, Southeast and Southwest Areas Pension Fund v. Joe McClelland, Inc.,* 23 F.3d 1256, 1259 (7th Cir.1994)).

### 3. The Text of the Plan

■ The text of the Plan makes it clear that the Severance Committee has the power to review the reasonableness and good faith of a Plan Participant's statement. First and foremost, there is the definition of Stated Good Reason in the Plan. The definition of Stated Good Reason begins, " 'Stated Good Reason' means a written determination by a Participant that he reasonably and in good faith cannot continue to fulfill the responsibilities for which he was employed." Plan § 2.1(t). Admittedly, this particular phrase, standing alone, is subject to more than one reasonable interpretation. However, when read in conjunction with the entire definition of Stated Good Reason, it is subject to only one reasonable interpretation.

The next sentence in the definition states, "The Participant's determination will be conclusively presumed to be reasonable and in good faith if, . . . ." Plan § 2.1(t). The definition then goes on to identify certain circumstances, such as reduction in pay and change in duties. The conclusive presumptions of Good Faith make it clear that a Participant's determination of reasonableness and good faith is not totally subjective, that rather the Severance Committee would review it. Plaintiffs' interpretation that a Participant's determination is totally subjective contradicts the notion that the determination may be conclusively presumed. That a

definition may be conclusively presumed implies that someone will be reviewing the determination. Otherwise, it would make no sense to have conclusive presumptions. Plaintiffs' argument that they merely provided objective examples does not square with the wording in the definition.

Beyond the conclusive presumptions, the definition is still laced with content-laden language. The mere fact that it is called Stated Good Reason is contrary to an interpretation wherein the Participant could "pull his or her own chute" at his or her sole discretion; in other words, if there was no check on whether the Participant's reason was a good one, then the Participant could really pull the trigger for any reason or even no reason. Similarly, the use of the terms "reasonable" and "good faith" suggests that there is more to the determination than Plaintiffs contend.

The rest of the Plan provides further support for Defendants' interpretation. For example, Defendants point out that the Plan is a double trigger plan: the first trigger being a change in control and the second trigger being something else, such as a good reason for leaving. Yet, if Plaintiffs were correct, it makes sense that Pioneer would have made it a single trigger plan wherein all that was required is a change in control. Also, it must be remembered that under the Plan a termination of employment for Stated Good Reason is a species of "Involuntary Termination of Employment." Plan § 2.1(k). Plaintiffs interpretation comes very close to making Stated Good Reason a voluntary termination.

In addition, the review process intimates a much more searching inquiry than is suggested by Plaintiffs. The Plan outlines the review process as follows:

> Any claim for benefits shall be made in writing to the Severance Committee. The claim for benefits shall be reviewed by the Severance Committee. If any part of the claim is denied, the Severance Committee shall provide a written notice ... setting forth: (a) the specific reasons for the denial; (b) specific reference to the provision of this Plan upon which the denial is based; (c) any additional information the claimant should furnish to perfect the claim; and (d) the steps to be taken if a review of the denial is desired.

Plan § 4.7. However, there would be very little point to this complicated review process if all that was necessary was that the Participant write down on a piece of paper that he or she cannot reasonably and in good faith continue to fulfill the duties for which he or she was employed. Moreover, the Severance Committee that is in charge of this review process is made up of high level executives.[1] It would make very little sense for a company to have high level

---

1. The Plan states that the Severance Committee is comprised of:

   the Compensation Committee of the Board of Directors or such other person or persons appointed by the Board of Directors to administer the Plan. If the Severance Committee is not the Compensation Committee and the Board does not appoint a Severance Committee, the Board of Directors shall be the Severance Committee.

   Before the Change in Control, the Pioneer Board had appointed the five highest ranking executives at Pioneer to serve on the Severance Committee. After the Change in Control, Pioneer replaced the members of the Severance Committee with similarly senior executives. The Severance Committee consisted of the Director of Human Resources for Pioneer, the Director of Human Resources for DuPont Agricultural Enterprise, and the Director of Corporate Compensation and Benefits for DuPont. The Authorization Committee, which was appointed by the Board to hear appeals, consisted of the President, Chief Executive Officer, and Secretary of Pioneer, a Senior Vice President of DuPont Agricultural Enterprise, and the Executive Vice–President and Chief Operating Officer of DuPont.

executives performing the clerical tasks Plaintiffs suggest the Severance Committee performs.

It is therefore clear that Stated Good Reason is not a totally subjective trigger. The Severance Committee has the power to review whether a Plan Participant's determination is in fact reasonable and in good faith. And Defendants are entitled to summary judgment on this interpretation.

### B. Changes to Pioneer's Compensation, Bonus, or Benefit Plans Made Prior to October 1, 1999

■ ˙Plaintiffs claim that the changes in one or all of Pioneer's compensation, bonus, or benefit plans made prior to October 1, 1999 triggered Stated Good Reason. Specifically, Plaintiffs' claim concerns two of the conclusive presumptions. The Plan provides that a conclusive presumption of Stated Good Reason exists if, "without the Participant's express written consent, the Company ..."

> (b) fails to continue any bonus plans in which the Participant was entitled to participate immediately prior to the Change in Control, substantially in the form then in effect, [or]
>
> (c) fails to continue in effect any benefit or compensation plan in which the Participant is participating immediately prior to the Change in Control (or plans providing substantially similar benefits....)

Plan § 2.1(t). In order to determine whether one of these two conclusive presumptions applies, it is necessary to compare the compensation, bonus, and benefit plans in effect prior to the Change in Control with the compensation, bonus, and benefit plans in effect after the Change in Control.

Essentially, Plaintiffs assert that DuPont was in effective control of Pioneer prior to October 1, 1999, the official date of the merger, and that Defendants cannot interpret the Plan in such a way so as to allow them to make the changes they did prior to that date without triggering the conclusive presumptions. Plaintiffs state that such an interpretation is at odds with other provisions in the Plan specifically designed to protect Pioneer's upper-level management team from the conduct of an acquiring company. They point to the purpose of the Plan, which is to attract and retain "highly qualified individuals" and to "reduce the distractions ... inherent in a takeover threat." Plan § 1.2. They point to the fact that the Plan vests the Participants with a contractual right to benefits.[2] Plaintiffs also point to Section 8.1 of the Plan, which states that "any amendment which reduces Severance Benefits or any termination of the Plan shall be disregarded for all purposes if such amendment or termination is adopted during the one year period immediately preceding a Change in Control." Finally, they claim that the fact that the drafters sought to prevent an acquiring company from having the ability to force a reduction in benefits is also demonstrated by Sections 5.2 and 5.3 of the Plan. Those sections require that as soon as a "Potential Change in Control" occurs, Pioneer shall fund a trust in "an amount that is no less than one hundred (100%) of the Severance Benefits" potentially payable to all Participants.

Once again, however, the text of the Plan belies Plaintiffs' arguments. The Plan defines Change in Control as the acquisition of twenty-five percent or more of Pioneer's stock or the nomination and election of twenty-five percent or more of

---

**2.** Section 1.3 of the Plan, entitled, "Contractual Rights to Benefits," states: "This Plan establishes and vests in each Participant a contractual right to the benefits to which he is entitled hereunder, enforceable by the Participant against the Company."

the members of the Board of Directors of Pioneer. Plan § 2.1(d). It is clear that in this case the Change in Control occurred when DuPont acquired twenty-five percent of Pioneer's stock on October 1, 1999. The conclusive presumptions all require changes to the Plan after a Change in Control. Therefore, the changes to one or all of Pioneer's compensation, bonus, or benefit plans that occurred prior to October 1, 1999 could not have triggered the conclusive presumptions, and Defendants are entitled to summary judgment on that fact.

## IV. CONCLUSION

Defendants' Motion for Partial Summary Judgment (Clerk's No. 237) is granted.

**IT IS SO ORDERED.**