No. 95-2747

Jeff Ravenscraft; Martha     *
Ravenscraft,     *
    *
      Plaintiffs - Appellants,     *
    *   Appeal from the United States
      v.     *   District Court for the
    *   Southern District of Iowa.
Hy-Vee Employee Benefit Plan     *
and Trust; Hy-Vee Food Stores,     *
Inc.,     *
    *
      Defendants - Appellees.     *

Submitted: December 14, 1995

Filed: June 7, 1996

Before BOWMAN and LOKEN, Circuit Judges, and WOLLE,[*] Chief District Judge.

LOKEN, Circuit Judge.

Martha and Jeff Ravenscraft challenge the denial of benefits under a health care plan governed by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq. ("ERISA"), claiming that Martha's employer improperly amended the plan and then terminated coverage of medical expenses for infertility treatments. The district court[1] granted summary judgment dismissing their ERISA claims, and the Ravenscrafts appeal. We affirm.

---

[*]The HONORABLE CHARLES R. WOLLE, Chief Judge of the United States District Court for the Southern District of Iowa, sitting by designation.

[1]The HONORABLE HAROLD D. VIETOR, United States District Judge for the Southern District of Iowa.

Martha Ravenscraft is employed by Hy-Vee Food Stores, Inc. ("Hy-Vee"). She and her husband Jeff are eligible for health benefits under the Hy-Vee Benefit Plan and Trust (the "Plan"), an employee welfare benefit plan under ERISA. See 29 U.S.C. § 1002(1). Martha underwent a tubal ligation sterilization procedure in 1986, but by the Spring of 1992 the Ravenscrafts had decided they would like to have another child.

Because the Plan does not cover medical expenses to reverse voluntary sterilization, Martha inquired whether the Plan would cover in vitro fertilization ("IVF") treatment, a procedure that in some cases has achieved conception without surgically reversing prior sterilization. The Plan's Benefit Coordinator responded, "it appears the treatment would be a covered benefit [under] our plan, subject to all plan provisions." The Ravenscrafts then began IVF treatment at the University of Iowa Hospitals. Between May and August 1992, they completed one unsuccessful IVF treatment cycle and terminated a second cycle due to an unrelated health problem. The parties agree that each IVF cycle is a separate treatment that may or may not result in pregnancy.

In the Fall of 1992, Hy-Vee's Board of Directors concluded that it is inconsistent to cover IVF expenses but not sterilization reversal expenses. Accordingly, they amended the Plan to provide that no benefits would be paid to promote conception if the patient previously underwent voluntary sterilization. The Ravenscrafts received notice of this amendment in December 1992, and Jeff telephoned to complain about the change in coverage. The amendment took effect on January 1, 1993, and the Ravenscrafts cancelled IVF procedures scheduled for January 8. On January 12, their attorney wrote the Plan Director demanding that the Plan "restore infertility treatment benefits." She responded that Hy-Vee had properly exercised its right to change the terms of the Plan.

The Ravenscrafts commenced this action in state court in February 1994 against Hy-Vee and the Plan.  Defendants removed, and both sides moved for summary judgment.  The district court granted defendants' motion, dismissing the complaint in its entirety.  The Ravenscrafts appeal the dismissal of their ERISA claims.

1. In the district court, the Ravenscrafts argued that the Plan amendment eliminating coverage of IVF treatment expenses is invalid because Hy-Vee's disclosure that it reserves "the right to change or terminate the Plan at any time" does not comply with ERISA's disclosure requirement.  See 29 U.S.C. § 1102(b)(3).  On appeal, the Ravenscrafts concede that this argument is foreclosed by Curtiss-Wright Corp. v. Schoonejongen, 115 S. Ct. 1223, 1228-29 (1995), which held that a disclosure generally reserving the employer's right to amend the plan satisfies § 1102(b)(3).  However, the Ravenscrafts argue that defendants nonetheless violated ERISA disclosure obligations because they did not disclose that the Plan's trustees must finally approve Plan amendments that "change substantially the powers, duties, or liabilities of the Trustees," including amendments changing Plan benefits.

We doubt that the proper remedy for such a disclosure violation would be to invalidate the plan amendment.  But we put that question aside because the Ravenscrafts' disclosure theory fails on the merits.  The Plan discloses that "the Company" may amend the Plan.  A company acts through its officers and agents -- in this case Hy-Vee's Board of Directors -- not through independent Plan trustees.  See Schoonejongen, 115 S. Ct. at 1229.  Moreover, the Plan's separate Trust Agreement provides that the trustees must pay benefits according to the "Plan Document," which in turn is defined as the schedule of benefits "as may from time to time be amended."  Thus, the trustees have no role in amending the Plan, and their duties are not substantially changed by amendments to the Plan's schedule of benefits.  The district court correctly dismissed the Ravenscrafts' ERISA disclosure claim.

2. The Ravenscrafts next argue that Hy-Vee abused its discretion by amending the Plan to terminate coverage for IVF treatments. ERISA does not provide a right to benefits under an employee welfare benefit plan, and an employer does not act as an ERISA fiduciary in adopting or amending that type of plan. Schoonejongen, 115 S. Ct. at 1228. Thus, absent a contrary contractual commitment, "[a]n employer may unilaterally modify or terminate health benefits." John Morrell & Co. v. United Food & Commercial Workers Int'l Union, 37 F.3d 1302, 1303-04 (8th Cir. 1994), cert. denied, 115 S. Ct. 2251 (1995). Here, Hy-Vee retained complete discretion to amend the Plan. Its decision to amend the Plan to eliminate the benefits in question is not subject to judicial review for abuse of discretion.

3. The Ravenscrafts next argue that defendants were arbitrary and capricious in applying the January 1993 Plan amendment to deny their claim for continuing IVF benefits. That broad issue was presented in counsel's demand letter to the Plan Director -- he asserted that the Benefit Coordinator obligated the Plan to provide those benefits for as long as the Ravenscrafts continued IVF treatments when the Benefit Coordinator wrote to inform Martha that IVF treatments were covered. Defendants denied this claim, explaining that each IVF treatment cycle is a separate medical procedure and therefore the amendment precludes coverage for IVF cycles that begin after its effective date.

In their summary judgment memorandum to the district court, however, the Ravenscrafts argued a more limited and factually different theory. They submitted an affidavit that Martha had begun a third cycle of IVF treatments in November 1992 and would have continued that cycle in January 1993 had the Plan amendment not caused her to cancel. Pointing to defendants' interrogatory answer admitting that "if a member was in a treatment cycle prior to a change in plan coverage, said member would be allowed to complete that particular treatment cycle," and to a Trust Agreement

-4-

provision that no amendment to that Agreement may result in a reduction of benefits payable on account of a pre-existing "sickness," the Ravenscrafts now argued that defendants were arbitrary and capricious in invoking the amendment to terminate coverage of their on-going third IVF treatment cycle.

There is certainly support for this theory in the ERISA case law. See Lutheran Med. Ctr. v. Contractors Health Plan, 25 F.3d 616, 621-22 (8th Cir. 1994) (an "unreasonable inconsistency" in paying health benefits is evidence of arbitrary and capricious action).  The problem is that it was never presented to the Plan administrators; it grew out of discovery and the summary judgment process in the district court.  In support of their motion for summary judgment, defendants submitted an affidavit by the Plan Director averring that she first learned of Martha Ravenscraft's claim of a third IVF treatment cycle in Martha's summary judgment affidavit.  This averral was supported by other evidence -- Hy-Vee's business record of the December 21, 1992, telephone complaint from Jeff Ravenscraft, which noted that Martha's next cycle would begin January 8, 1993; counsel's January 12, 1993, demand letter, which made no mention that Martha had begun another treatment cycle in late 1992; and information obtained from the University of Iowa confirming that Martha had completed a treatment cycle in August and cancelled another that had been scheduled for January 1993.  Although the Ravenscrafts countered that Plan officials should have known that Martha was in the middle of a new IVF treatment cycle when the amendment took effect, the district court concluded that "the record supports a finding that defendants' belief that [Martha] was between [IVF] treatments was not arbitrary."  In reviewing that conclusion *de novo*, as we must, it is essential to identify the applicable ERISA summary judgment standard.

ERISA permits a plan beneficiary to sue "to recover benefits due to him under the terms of the plan or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C.

§ 1132(a)(1)(B). The first issue in considering such a claim is whether the appropriate standard of judicial review is *de novo* or deferential, an issue that affects both the evidence admissible in the district court, and the legal standard to be applied by the trial and appellate courts. See Donatelli v. Home Ins. Co., 992 F.2d 763, 765 & n.2 (8th Cir. 1993). Here, the Ravenscrafts concede that the deferential standard applies; indeed, they frame the issue as being whether defendants acted in an arbitrary and capricious manner.

In conducting judicial review under the deferential standard, the reviewing court looks to the evidence before the Plan administrators when they denied the claim. See Oldenburger v. Central States, S.E. & S.W. Areas Teamster Pension Fund, 934 F.2d 171, 174 (8th Cir. 1991). In their claim to the Plan, the Ravenscrafts demanded IVF benefits for as long as they might wish to continue those treatments, without disclosing the status of Martha's treatment when the Plan amendment took effect. However, well into the summary judgment process, the Ravenscrafts offered new evidence in support of the more modest theory that they were entitled to benefits for the uncompleted third IVF treatment cycle. This claim was never presented to the Plan administrators, and defendants responded with compelling evidence that the Plan administrators did not know Martha Ravenscraft had begun a third IVF cycle when the amendment took effect. The district court, applying the deferential standard of review urged by the Ravenscrafts, correctly concluded that the Plan administrators' denial of the Ravenscrafts' claim was not arbitrary and capricious as a matter of law. See Oldenburger, 934 F.2d at 174.

Before leaving this issue, we note a further complexity. "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire &

Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). We find no Plan provision conferring discretionary authority to decide benefit claims.[2] In other words, the Ravenscrafts erred in arguing this issue under the deferential standard of review. Moreover, under the *de novo* standard of review, a district court for good cause shown "may allow the parties to introduce evidence in addition to that presented to the fiduciary." Donatelli, 992 F.2d at 765. However, the Ravenscrafts did not show cause for their eleventh-hour change of theory and new evidence, and they did not urge the district court to apply the principles of *de novo* review. In these circumstances, it was not plain error for the district court to apply the deferential standard of review and dismiss this claim.

4. Finally, the Ravenscrafts argue that the Plan is estopped to terminate continuing IVF benefits in progress. However, estoppel principles are relevant in a beneficiary's action to recover benefits under § 1132(a)(1)(B) only in the context of judicially reviewing the Plan fiduciary's denial of benefits under the applicable *de novo* or deferential standard of review. Estoppel may not otherwise be employed to vary the terms of an ERISA plan. See Houghton v. SIPCO, Inc., 38 F.3d 953, 958 (8th Cir. 1994); Slice v. Sons of Norway, 34 F.3d 630, 632-33 (8th Cir. 1994).

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[2]The claim and benefit provisions read like a typical insurance policy, which is not surprising since the Plan Administrator is an insurance company. Such provisions do not trigger the deferential ERISA standard of review. See Bounds v. Bell Atl. Enters. Flexible Long-Term Disability Plan, 32 F.3d 337, 339 (8th Cir. 1994).