# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 99-4139
No. 00-1403

———————

Michael E. Walke,                          *
                                           *
    Plaintiff - Appellee,                  *
                                           *  Appeals from the United States
v.                                         *  District Court for the
                                           *  District of Minnesota.
Group Long Term Disability Insurance,      *
                                           *
    Defendant - Appellant.                 *

———————

Submitted: November 16, 2000

Filed: June 19, 2001

———————

Before LOKEN, JOHN R. GIBSON, and MORRIS SHEPPARD ARNOLD, Circuit
    Judges.

———————

LOKEN, Circuit Judge.

After serving twelve years as administrator of Lake View Memorial Hospital, Michael E. Walke was granted long-term disability benefits in September 1994 under the hospital's Group Long Term Disability Insurance Plan (the "Plan"), an ERISA welfare benefit plan. In May 1996, the Plan administrator, Reliance Standard Life Insurance Company ("Reliance"), terminated Walke's monthly benefits on the grounds that he was no longer totally disabled nor under the regular care of a physician. After exhausting his appeal rights under the Plan, Walke commenced this ERISA action to

recover the terminated benefits. See 29 U.S.C. § 1132(a)(1)(B). The district court concluded that Reliance abused its discretion in terminating benefits. It granted summary judgment in Walke's favor, ordering benefits paid until Walke reaches age 65 because his condition is not a "mental or nervous disorder." The court later granted Walke an award of attorney's fees in the amount of $15,212.21. The Plan appeals both rulings. We conclude that the benefits decision is subject to *de novo* judicial review, and that Walke was entitled to continuing benefits subject to the two-year limitation for mental or nervous disorders. Accordingly, we remand for entry of an amended judgment and affirm the award of attorney's fees.

## I. Background.

Walke was hospitalized in June 1994, suffering from fatigue, dizziness, and heart palpitations. An EKG exam revealed nonsustained ventricular tachycardia (rapid beating of the heart). He applied to the Plan for long-term disability benefits on July 12, submitting an Attending Physician's Statement of Disability from Dr. Richard Taylor, a cardiologist. Dr. Taylor reported that Walke had a long history of stress-related heart palpitations, and that he was being released to return to work on a limited basis but "needs to avoid stressful situations." Walke returned to his job as hospital administrator on a part-time basis on July 18, but he tired easily and was unable to resume his duties on a full-time basis. He resigned from the position that fall.

The terms of the Plan are set forth in a Reliance group long term disability insurance policy. The policy provides that monthly benefits will be paid if the insured "(1) is Totally Disabled as the result of a Sickness or Injury covered by this Policy, (2) is under the regular care of a Physician, (3) has completed the Elimination Period, and (4) submits satisfactory proof of Total Disability to [Reliance]." The policy defines "Totally Disabled" to mean "that as a result of an Injury or Sickness . . . an insured cannot perform the material duties of his/her regular occupation." An insured who is "Partially Disabled" -- able to perform all material duties on a part-time basis or some

-2-

duties on a full-time basis -- "will be considered Totally Disabled." Monthly benefits stop if the insured "ceases to be Totally Disabled." If the total disability is "due to mental or nervous disorders," monthly benefits stop after twenty-four months unless the insured is in a hospital or institution.

Reliance approved Walke's application for benefits after reviewing Dr. Taylor's attending physician statement and a description of the Hospital Administrator's duties furnished by Lake View Hospital. In April 1996, Reliance asked Walke to submit proof of continuing disability and provided physician forms for this purpose. Dr. Taylor completed the forms, reporting:

> -- Walke remained under Dr. Taylor's care and was taking two prescribed medications, Calan and Atenolol. Dr. Taylor had not seen Walke since April 26, 1995. He had received treatment at the office on November 13, 1995.

> -- Walke has the physical capacity to perform medium work, but he has a history of stress-related ventricular tachycardia and chronic anxiety disorder.

> -- "Mr. Walke was hospitalized for ventricular tachycardia in 6/94. His arrhythmias appeared to be stress related and were exacerbated by the stress of his job as a hospital administrator. He therefore was (and is) advised that it may be detrimental to his health to continue as a hospital administrator (because of the high stress level)."

Based on this submission, Reliance notified Walke that his disability benefits were terminated effective May 23, 1996. The notice explained:

> The medical documentation concerning your condition demonstrates you are physically capable of sedentary work activity. . . . [O]ur determination . . . must be based on the objective medical documentation in your claim file. . . . Perceived stress is a subjective and unquantifiable factor which cannot be correlated with any objective evidence.

Walke asked Reliance to review this adverse decision, as ERISA provides.  See 29 U.S.C. § 1133(2).  He submitted a copy of his personal "heart diary," which recorded instances of fatigue, anxiety, dizziness, and irregular heartbeats while he was engaged in a variety of activities on fifteen days between April 17 and September 5, 1996.  He also submitted a June 1996 opinion in which Dr. Taylor reported:

> Mr. Walke has a form of idiopathic ventricular tachycardia.  He has no evidence of underlying heart disease.  This condition is usually benign, i.e., not life threatening, although his symptoms have been quite disabling for him. . . .
>
> In 1994, when I first saw Mr. Walke, there seemed to be clear relationship between his symptoms of palpitation, nonsustained ventricular tachycardia on the monitor and the high stress level that he was under. . . . [T]he recommendation was that by lowering the stress level, the symptoms of palpitations, which were accompanied by nonsustained ventricular tachycardia, would hopefully get better, and, in fact, that seemed to be the case.
>
> I last saw Mr. Walke on April 26, 1995.  At that time he was doing reasonably well.  I cannot really comment on what has happened since that time.

After reviewing this submission, Reliance reaffirmed its benefits denial because Walke "is no longer disabled from a cardiac standpoint and is not under the care of any . . . physician for cardiac or a stress related condition."  This lawsuit followed.

## II. The ERISA Standard of Review.

In reviewing the denial of benefits by an ERISA plan administrator, the reviewing court applies an abuse-of-discretion standard when the plan gives the administrator discretion to determine eligibility for benefits and to construe the terms of the plan. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Here, the district court applied the abuse-of-discretion standard. Walke contends the court should have applied the *de novo* standard of review. We review this issue *de novo*. Barnhart v. UNUM Life Ins. Co. of Am., 179 F.3d 583, 587 (8th Cir. 1999).

In this circuit, when an insurance policy is the ERISA plan, the abuse-of-discretion standard applies only if the policy contains "explicit discretion-granting language." Bounds v. Bell Atlantic Enter. F.L.T.D. Plan, 32 F.3d 337, 339 (8th Cir. 1994). As Judge Posner explained in Herzberger v. Standard Insurance Co., 205 F.3d 327, 332 (7th Cir. 2000), a policy claim provision stating that "the plan administrator will not pay benefits until he receives satisfactory proof of entitlement . . . states the obvious, echoing standard language in insurance contracts not thought to confer any discretionary powers on the insurer." We made the same point in Ravenscraft v. Hy-Vee Employee Benefit Plan & Trust, 85 F.3d 398, 402 n.2 (8th Cir. 1996), when we noted that the claim provisions of a typical insurance policy "do not trigger the deferential ERISA standard of review."

Here, the Reliance policy provides that the Plan will pay benefits if the insured "submits satisfactory proof of Total Disability to us." If the words "to us" were omitted, the provision would be no different than the language that did not confer discretion in Bounds -- "after the Travelers receives adequate proof of loss." On the other hand, if the words were rearranged to require submission of proof "satisfactory to us," the provision would be no different than the one held to be discretion-conferring in Donato v. Metropolitan Life Insurance Co., 19 F.3d 375, 379 (7th Cir. 1994), a case cited favorably in Bounds, 32 F.3d at 339, as well as Herzberger, 205 F.3d at 331. The

-5-

problem is that "to us" is ambiguously located.  Does it modify "submits," so that it merely confirms how the insured starts the claims process, or does it modify "satisfactory," signaling an intent to confer discretion and thereby obtain the deferential review under ERISA that an insurer normally does not have when its claims decisions are judicially reviewed?

We acknowledge that two other circuits have construed this precise language as conferring discretion under ERISA.  See Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 381 (6th Cir. 1996); Wilcox v. Reliance Standard Life Ins. Co., 175 F.3d 1018, 1999 WL 170411, at *2 (4th Cir. 1999) (unpublished).  But we do not agree.  The decision to confer discretion on an ERISA plan administrator affects both the rights of plan participants and beneficiaries, and the administrator's burden to assemble an adequate claims record and to adequately explain its decision at the administrative level.  See Donatelli v. Home Ins. Co., 992 F.2d 763, 765 (8th Cir. 1993); Cox v. Mid-America Dairymen, Inc., 965 F.2d 569, 574 (8th Cir. 1992).  It is relatively easy for an insurer to use unambiguous discretion-conferring language when its group policy will serve as an ERISA plan, as the Hartford did in McGarrah v. Hartford Life Insurance Co., 234 F.3d 1026, 1026, 1030 (8th Cir. 2000) (administrator has "full discretion and authority to determine eligibility for benefits and to construe" the policy).  Therefore, when the insurer instead issues a policy containing ambiguous claims submission language commonly used in non-ERISA contexts, the presumption should be there was no intent to confer such discretion.  As Reliance submitted no evidence demonstrating a contrary intent in this case, we apply the *de novo* standard of review.

### III.  The Totally Disabled Issue.

Applying the abuse-of-discretion standard, the district court overturned the Plan's decision to discontinue benefits, concluding "[t]here is simply no medical evidence that plaintiff can perform his duties to the hospital without adverse and

objectively demonstrated physical consequences." Applying the more rigorous *de novo* standard of review, we agree.[1]

In September 1994, after Walke had tried to resume his duties but could only do so on a part-time basis, Reliance granted total disability Plan benefits, accepting Dr. Taylor's Attending Physician Statement as establishing that stress-related tachycardia rendered Walke unable to perform the material duties of his regular occupation, hospital administrator. With the elimination of his job stress, Walke improved, that is, his disabling symptoms of fatigue, dizziness, and rapid heartbeat subsided. But he continued to take medications prescribed by Dr. Taylor, who opined in April 1996 "that it may be detrimental to his health to continue as a hospital administrator." Nothing in the claims record justified Reliance's decision that a change of circumstances warranted termination of the benefits it initially granted. The only change was that Walke resigned from the stressful position that had disabled him. There is no evidence that he recovered the ability to perform that job; indeed, his 1996 heart diary is substantial evidence to the contrary.

Reliance argues that benefits were properly terminated because Walke was no longer under a physician's "regular care." We disagree. In April 1996, Dr. Taylor reported -- on a form supplied by Reliance -- that Walke was under Dr. Taylor's care, was taking prescribed medications, and had visited the doctor's office for treatment in November 1995. Reliance did not request an additional medical examination, and there is no evidence "that additional doctor visits would have influenced the progression of

---

[1]Under the *de novo* standard of review, a district court has some discretion to allow the parties to supplement the record that was before the plan administrator. See Donatelli, 992 at 765. But in this case, Reliance did not seek to supplement the record and strenuously opposed Walke's attempt to do so. As in Bounds, 32 F.3d at 339, we conclude the claim file compiled by Reliance is sufficient for us to review the benefits denial using the *de novo* standard of review.

[Walke's] disability." Rowan v. UNUM Life Ins. Co. of Am., 119 F.3d 433, 437 (6th Cir. 1997). This was not a valid basis for terminating benefits.

## IV. The Mental or Nervous Disorder Issue.

In its notice terminating benefits, Reliance explained that "stress is a subjective and unquantifiable factor which cannot be correlated" with the objective medical evidence needed to establish total disability. But an inability to cope with stress can disable a person from performing his or her regular occupation, even if the person can still perform other work. Indeed, Reliance recognized as much when it initially granted disability benefits after Walke was hospitalized for stress-induced fatigue, dizziness, and tachycardia. Thus, that Walke's disability is stress-related does not preclude him from recovering Plan benefits. The real issue is whether those benefits are limited to twenty-four months because Walke's disabling stress-induced tachycardia is the result of a mental or nervous disorder.[2]

When an ERISA plan limits disability benefits for mental or nervous disorders, "the terms should be accorded their ordinary, and not specialized, meanings." Brewer v. Lincoln Nat. Life Ins. Co., 921 F.2d 150, 154 (8th Cir. 1990). The district court concluded the mental or nervous disorders limitation did not apply because Walke "has been diagnosed with tachycardia, a recognized objective finding." However, "to find that a disability falls outside of the term 'mental disorder' (as used in an ERISA plan) because the disability has 'physical' symptoms would render the term 'mental disorder' obsolete in this context." Lynd v. Reliance Standard Life Ins. Co., 94 F.3d 979, 984 (5th Cir. 1996).

---

[2]Interestingly, the Reliance claim file contains one examiner's recommendation that benefits be paid to September 23, 1996, under the two-year limitation for mental and nervous disorders.

The disabling symptoms of Walke's condition are fatigue, anxiety, and dizziness brought on by work-related stress. In Stauch v. Unisys Corp., 24 F.3d 1054, 1056 (8th Cir. 1994), we concluded that the plan's mental illness limitation applied because the claimant's symptoms were "depression, fatigue, irritability, sleeplessness, poor appetite, and impaired concentration and memory." Given the absence of any objective medical finding that Walke's condition is caused by a physical heart disease or disorder, we conclude that laypersons would consider his symptoms to result from a "nervous disorder." Therefore, Walke's total disability is "due to mental or nervous disorders" and subject to the twenty-four-month benefits limitation.

## V. The Attorney's Fee Issue.

The Plan also appeals the district court's discretionary grant of an attorney's fee under 29 U.S.C. § 1132(g)(1). Citing the relevant factors we identified in Lawrence v. Westerhaus, 749 F.2d 494, 496 (8th Cir. 1984), the Plan argues that Reliance did not act in bad faith, its position was not without merit, and the decision in Walke's favor will not benefit other Plan participants. However, there is a presumption that an ERISA plan beneficiary who succeeds in recovering plan benefits should recover attorney's fees, and the unsuccessful party has the burden of proving "special circumstances" that overcome the presumption. Lutheran Med. Ctr. v. Contractors, Laborers, Teamsters & Engineers Health & Welfare Benefit Plan, 25 F.3d 616, 623-24 (8th Cir. 1994). The Plan has established no special circumstances in this case, and the amount of the fee award, $15,212.21, is reasonable even taking into account the fact that Walke's benefits recovery is now reduced by the twenty-four-month nervous disorders limitation. The January 4, 2000, fee award order is affirmed.

The October 7, 1999, judgment of the district court is reversed and the case is remanded for entry of an amended judgment consistent with this opinion. We urge the parties to agree on the amount of the amended judgment without the need for further proceedings in the district court. Each party will bear his/its own costs of appeal.

JOHN R. GIBSON, Circuit Judge, concurring in part and dissenting in part.

I concur in parts I, II, III, and V of the court's opinion.

I respectfully dissent from part IV of the court's opinion as I believe that it improperly characterizes Walke's symptoms of fatigue, heart palpitations, and dizziness brought on by work-related stress as a mental illness. The court relies on Brewer v. Lincoln National Life Insurance Co., 921 F.2d 150 (8th Cir. 1990), Stauch v. Unisys Corp., 24 F.3d 1054 (8th Cir. 1994), and Lynd v. Reliance Standard Life Insurance Co., 94 F.3d 979 (5th Cir. 1996), but they all involve symptoms far different from Walke's. The symptoms in those cases fall within the ordinary meaning of mental or nervous disorders. As we noted in Brewer, the ordinary meaning of a disease is what a lay person concludes from knowing the symptoms: "[I]llnesses whose primary symptoms are depression, mood swings and unusual behavior are commonly characterized as mental illnesses . . . ." 921 F.2d at 154. In contrast, Walke's illness has primary symptoms that are commonly characterized as physical illness.

The district court's order stated that there was no evidence that Walke's disability related to a nervous or mental condition. Rather, the evidence indicated tachycardia, defined as a rapid beating of the heart. While tachycardia may be exacerbated or induced by stress, there was no evidence showing it to be a mental condition. The medications prescribed for Walke's condition are Atenolol, a medication for hypertension, and Calan, a medication for angina, arrhythmia, and essential hypertension.

I agree with the findings and conclusions of the district court on this issue, and I believe that the conclusion reached in part IV of the court's opinion today cannot be sustained on the record before us.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.