259 F.Supp.2d 955 (2003)
Robert C. MCGEE, Plaintiff,
v.
RELIANCE STANDARD LIFE INSURANCE COMPANY, Defendant.
No. 4:02CV453-DJS.
United States District Court, E.D. Missouri, Eastern Division.
April 28, 2003.
*957 Robert J. Blackwell, James B. Day, Blackwell & Associates, P.C., O'Fallon, MO, for Plaintiff.
Michael A. Lawder, Hinshaw & Culbertson, Belleville, MO, for Defendant.

ORDER
STOHR, District Judge.
In December 1999, plaintiff was employed by HASCO International, Inc. as its Vice President of Operations, and was an insured under HASCO's group long term disability insurance policy with defendant Reliance. At that time, plaintiff sought disability benefits on the basis that he suffered from major affective disorder and anxiety.[1] Defendant approved short term disability benefits for the period from December 24, 1999 through March 24, 2000. Thereafter defendant approved long term disability benefits, but later indicated *958 that it would terminate the benefits after June 1, 2000. Plaintiff brings a claim under ERISA[2], 29 U.S.C. § 1132(a)(1)(B), seeking judicial review of the termination of benefits. The matter is now before the Court on the parties' cross-motions for summary judgment.
The following facts are established by the record and are undisputed for purposes of the instant motions.
1. The relevant policy provisions define total disability as the inability to "perform the material duties of [one's] regular occupation." (RSL 102)[3]
2. Plaintiff stopped working as of December 17, 1999. Plaintiffs statement and claim for long term disability benefits was signed on February 28, 2000 (RSL 83). On March 3, 2000 and March 4, 2000, plaintiffs primary care physician, Dr. O'Brien, signed Reliance forms indicating diagnoses including major affective disorder and anxiety disorder, expressing his opinion that plaintiff was unable to perform his job at that time, and indicating an inability to estimate the date on which plaintiff would be able to return to work. (RSL 90, 87)
3. On March 23, 2000, Reliance sent plaintiff a letter approving short term disability benefits for the period from December 24, 1999 to February 10, 2000 (RSL 92).[4] Plaintiff ultimately was awarded short term disability benefits for the full period of eligibility, through March 24. Plaintiffs eligibility for long term disability began as of March 17.
4. Reliance sent letters dated April 12, 2000 to seven treaters identified by plaintiff: Dr. Canale, Dr. Nogalski, Dr. McMorrow, Dr. Aubuchon, Dr. Lampros, Ms. Kelly and Dr. McGarry. Because plaintiffs claim of disability is based on depression and anxiety disorder, the most pertinent treaters for purposes of the Court's analysis are Ms. Kelly, a psychologist, and Dr. Canale, a psychiatrist.
5. On May 4, 2000, Dr. Canale provided a report on Reliance's form dated May 3, 2000, his own report dated January 26, 2000, and his progress notes through April 7, 2000. These materials indicated a diagnosis of major depression with psychosocial stressors of extreme severity (5 on a scale of 1 to 6). Dr. Canale's report gives a Global Assessment of Functioning (GAF) score in the range of 41 to 50, indicating serious symptoms or serious impairment in social or occupational functioning. Dr. Canale assessed plaintiffs condition as one of marked impairment (Class 4 of 5 classes) in all four rated areas, namely daily living activities, social functioning, concentration, and adaptation to stressful conditions. Having first seen plaintiff on January 26, 2000 and last seen him on April 7, 2000, Dr. Canale indicated an anticipated return to work date of June 1, 2000. (RSL 232, 235, 237)
6. Josephine Kelly, a psychologist, also provided Reliance with a report on its form. The undated form reflects a last visit by plaintiff on April 17, 2000. Like Dr. Canale, Kelly also reported a diagnosis of major depression with extremely severe psychosocial stressors. Kelly's GAF score was substantially higher, in the 61 to 70 range, indicating mild symptoms or mild *959 difficulty in social or occupational functioning. Like Canale, Kelly rated plaintiff as markedly impaired in three of the same four categories of functioning, but as extremely impaired (noting "unable to work") in the fourth category involving concentration. As to plaintiffs anticipated return to work date, Kelly noted "Not able to determine." (RSL 269)
7. Kelly's progress notes on each of plaintiffs sessions through May 17, 2000 were also submitted. These consistently indicate Kelly's assessment that plaintiff was making "minimal progress" in his mental status. (RSL 205)
8. Periodically Reliance conducted an internal Medical/Vocational Review of plaintiffs claim status, recorded on a two-part form. The top half of the form appears to be completed by a claims examiner, who then forwards the form to the Medical Department where the bottom half is completed by a nurse. The Medical/Vocational Review dated May 9 and May 18 indicates a claims examiner's skepticism: "[Diagnoses] seem valid but not disabling. Examiner seeing work avoidance rather than true impairment. Notes from all treating AP's on file support [total disability]?" The reviewing nurse indicates that Kelly's most current office notes are needed in Reliance's files, but that the medical records then on file support psychiatric impairment through May 6, 2000.
9. Reliance's June 6, 2000 letter indicated that plaintiffs application for long term disability benefits was approved, beginning as of March 17, 2000, the first date of eligibility. The letter indicated that benefits for the period after May 17, 2000 "are pending additional medical from Dr. Kelly." The reference to an "initial draft" issued the date of the letter appears to refer to a check for benefits for the period referred to in the letter, namely March 17 to May 17. (RSL 33)
10. Another Reliance Medical/Vocational Review (RSL 220) is dated July 8, 2000 by claims examiner Murray Ianni and July 12, 2000 by the reviewing nurse. Ianni's notation indicates that the most recent medical records received are for May 17 and that Reliance needs current records for additional benefits. The nurse's notations suggest that the state of the record supports benefits only until June 1, apparently referring to Dr. Canale's original return to work date.
11. The same claims examiner, Murray Ianni, prepared a "Claims Referral" form dated July 21, 2000, which appears to request that the recipient "review payment & closure" of plaintiffs file. The reply portion, written and signed by another, is dated July 24, saying "Per discussion, recheck cal. & prepare denial of add'l benefits." (RSL 68)
12. An unsigned fax cover sheet, which appears to have been faxed to Murray Ianni from Dr. Canale's offices on July 26, 2000, states that Dr. Canale had "ordered [plaintiff] off work until Aug. 1 ( & may need to extend!)." (RSL 198)
13. On a Medical/Vocational Review which Murray Ianni dated July 26, he appears to state his view that the medical record does not support plaintiffs disability benefits past June 1, 2000. The nurse who completed the bottom of the form, dated July 27, suggests the need to obtain records from therapist Kelly and psychiatrist Canale post-dating June 1 in order to determine continued disability. (RSL 196)
14. By letters dated August 11, claims examiner Murray Ianni requested new reports and additional records from Dr. Canale and Josephine Kelly.
15. Canale's response indicates a continued diagnosis of major depression, with severe psychosocial stressors (an improvement to 4 from 5 on the 6-point scale), and *960 a GAF score in the range of 41 to 50 (the same as his May report). Canale reports that treatment has thus far produced "no change" in plaintiffs condition though he describes plaintiff as "very motivated." Canale's report to Reliance also states that plaintiff remained "unable to work" and that Canale could not estimate a return to work date. Canale rates plaintiff as continuing to be markedly impaired in three of the four functioning areas, but having improved from Class 4 to Class 3 ("Moderate Impairment") in the area of activities of daily living. This report is dated August 15 and reflects that Canale had last seen plaintiff on July 31, 2000.
16. Kelly's undated report reflecting plaintiffs last visit as August 1, 2000 suggests improvement but some continuing impairment. Kelly reports no current psychosocial stressors, and a GAF score of 70 to 80, representing at worst only slight impairment in social or occupational functioning. Although Kelly continues to indicate marked impairment (Class 4) in plaintiffs adaptation to stressful circumstances, she rates plaintiff as having improved to moderate impairment (Class 3) in the area of concentration, to mild impairment (Class 2) in social functioning, and to no impairment (Class 1) in the activities of daily living. Kelly reports the effects of treatment as "good" but again does not provide a return to work date ("Vague"). (RSL 165)
17. Kelly's notes from plaintiffs June 12, 2000 session indicate that plaintiff reported "obsessing" over trying to decide about work, and that plaintiff was "still struggling [with] work decision." (RSL 168)
18. A Medical/Vocational Review dated September 11, 2000 by a Reliance nurse notes Kelly's "GAF of 75 which would be expected to support work function" and Kelly's notation that as of June 12, plaintiff was undecided about his return to work. The nurse then expresses the opinion that, based on this information, plaintiffs claim of impairment is "not supported beyond 6/1/00." (RSL 162)
19. Reliance's letter to plaintiff dated October 3, 2000 states the determination that plaintiff has not been shown to be disabled after June 1. In support of that conclusion, the letter cites (1) Dr. Canale's earlier June 1, 2000 return to work date, (2) the fact that plaintiff did not see Dr. Canale between May 19 and July 31, (3) therapist Kelly's GAF score of "75," and (4) Kelly's reference to plaintiff being undecided about returning to work. Reliance enclosed a check for benefits for the period from May 17 to June 1. (RSL 31)
20. The employer's Vice President of Human Resources sent Reliance a letter dated October 12, 2000, complaining about Reliance's and Ianni's handling of plaintiffs claim and expressing her opinion that plaintiffs continuing disability remained evident. (RSL 26)
21. Plaintiff sent Reliance an undated letter, received on November 1, 2000, requesting review of the denial of his claim and indicating that he had not yet been released to return to work by his treaters. (RSL 24)
22. On October 13, 2000, Dr. Canale wrote a letter "to whom it may concern," expressing his professional medical opinion that plaintiff had been disabled from work since Canale began treating him, and that plaintiff would remain disabled "for at least the next three years with no sign of recovery." Reliance received a copy of the letter. (RSL 161)
23. Josephine Kelly sent Reliance a letter dated October 30, 2000 stating that she had been in error to give plaintiff a GAF score of 75, and that a more accurate GAF score would be 50. Kelly further stated that plaintiffs reported conflicts about returning *961 to work reflected his desire, but continuing inability, to resume an active and productive life including a return to work. (RSL 160)
24. In connection with plaintiffs appeal of the termination of his benefits, Reliance obtained a report from psychiatrist Gladys Fenichel dated February 12, 2001. Fenichel's conclusions are based on her review of plaintiffs records, and not on her own examination of plaintiff. Fenichel states her opinion that "[t]he records do not substantiate that Mr. McGee has a significant psychiatric impairment that would interfere with his ability to function in a work setting." In support of this conclusion, Fenichel states that:
 there is no "documentation" in Kelly's or Canale's records suggesting that plaintiff is incapable of functioning in a work setting;
 the medical records do not provide examples of job difficulties or explain why plaintiff found his job unduly stressful;
 Canale's determination that plaintiff would remain disabled for three years is not explained;
 an individual with disabling depression would be expected to see his psychiatrist more often than six times between February and December;
 coordination between the treating psychiatrist and psychologist should have occurred in a case of disabling major depression; and
 Kelly's retroactive change to the GAF score is not explained, and the table Kelly completed concerning plaintiffs abilities is not compatible with a GAF of 50.
(RSL 152)
25. Defendant asserts, and plaintiff does not dispute, that in a March 20, 2001 telephone conversation with a Reliance employee, plaintiff admitted that Dr. Canale's letter indicating that plaintiffs disability would last three years was written at plaintiffs request to satisfy a requirement of plaintiffs mortgage company. (RSL 9)
26. Reliance's letter reporting the denial of plaintiffs appeal is dated March 28, 2001. In summary, it cites the following:
 Kelly's initial GAF score of "70" and later GAF score of "75", and insufficient explanation of her attempt to reduce the latter score to 50;
 rejection of Canale's conclusions based on the relative frequency of his treatment of plaintiff, both generally and in comparison with Kelly's, and based on Canale's three-year-duration letter; and
 the opinion of Dr. Fenichel.
(RSL 2)
The Supreme Court enunciated the appropriate standard of judicial review of benefit determinations by ERISA plan administrators in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Using principles of trust law, the Court held that a denial of benefits challenged under § 1132(a)(1)(B) should be reviewed under a de novo standard unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case a deferential standard is to be used. Firestone, 489 U.S. at 115,109 S.Ct. 948. The abuse of discretion standard of review is applicable in this case because the plan administrator had the discretionary authority to determine eligibility for benefits under the employee benefit plan.
The Eighth Circuit has held that a less deferential standard of review may be applied if "the insurance company that benefits financially from the claim's denial is also the ERISA plan administrator." *962 Glenn v. Life. Ins. Co. of North America, 240 F.3d 679, 680 (8th Cir.) (citation omitted), cert, denied, 534 U.S. 893, 122 S.Ct. 212, 151 L.Ed.2d 151, 2001 WL 914233 (Oct. 1, 2001). However, that less deferential standard of review is not automatic. Id. at 680-81 (citation omitted). See also Davolt v. Exec. Comm. of O'Reilly Automotive, 206 F.3d 806, 809 (8th Cir.2000) (citing Armstrong v. Aetna Life Ins. Co., 128 F.3d 1263, 1265-66 (8th Cir.1997)). The beneficiary must make a showing that "under the particular facts and circumstances of the case ... a conflict or procedural irregularity so tainted the process that it caused a serious breach of fiduciary duty." Glenn, 240 F.3d at 681 (citation omitted). See also Schatz v. Mutual of Omaha Ins. Co., 220 F.3d 944, 947 (8th Cir.2000) (requiring "material, probative evidence demonstrating that (1) a palpable conflict of interest ... existed, which (2) caused a serious breach of the plan administrator's fiduciary duty" in order to trigger less deferential standard of review) (citation and quotation marks omitted).
Plaintiff argues that the July 21, 2000 notation by claims examiner Murray Ianni suggesting that benefits be denied, preceding Reliance's request, receipt and review of supplemental medical records, and Ianni's later October 2000 letter denying benefits without referencing review of the supplemental medical information received since his July 21 notation, evinces a serious procedural irregularity forfeiting the deferential standard of review. Plaintiff further points to the fact that Reliance did not seek an independent physician's review before its initial termination decision, but obtained such a review only in response to plaintiffs appeal. The Court finds plaintiffs arguments unpersuasive.
First, the language plaintiff cites in the July 2000 "Claims Referral" form (RSL 68) is not Ianni's, but is part of the reply written by another. Ianni's own notation, difficult to decipher, appears to read: "Please review payment & closure." Even if this is a suggestion that benefits be terminated, and even after the reply suggesting agreement, Reliance in fact sought and obtained additional medical records before announcing its termination decision in October 2000. The requests for the records from plaintiffs treaters were signed by Ianni himself (RSL 164, 171). Furthermore, the October 3 benefits termination letter does reference medical records received in response to Reliance's August requests. For all these reasons, the Court cannot make the entirely speculative determination that the July 2000 "Claims Referral" form establishes an unsupported and improper foregone conclusion to terminate benefits.
Plaintiff cites Woo v. Deluxe Corp., 144 F.3d 1157, 1162 (8th Cir.1998). In Woo, the Eighth Circuit found less deferential review appropriate where the plaintiff had presented evidence of a financial conflict and the administrator had denied a claim without first obtaining an independent medical review. Id. at 1161. Here plaintiff offers no argument or evidence concerning a financial conflict. As for the independent medical opinion, the necessity for it in Woo arose from the unusual circumstances of the benefits claim, namely a rare disease and the delayed diagnosis of it supporting a retroactive claim that the plaintiff was disabled at the time she resigned from her job. No such unusual circumstances are present here. Furthermore, as Reliance points out, the claimant bears the burden of proving his entitlement to benefits, and the administrator ordinarily has no obligation to produce evidence of its own. Having rejected plaintiffs arguments in favor of a less deferential standard of review, the Court proceeds to consider the benefits determination plaintiff challenges.
*963 The abuse of discretion standard requires consideration whether the plan administrator was "arbitrary and capricious" in making its determination. See Schatz, 220 F.3d at 947 n. 4. The Court must consider "whether the decision to deny... benefits was supported by substantial evidence, meaning more than a scintilla but less than a preponderance." Id. at 949 (citation omitted). "Provided the decision is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made." Id. (citations and quotation marks omitted). The Court makes this determination by considering "only the evidence that was before the administrator when the claim was denied." Id. (citation and quotation marks omitted).
In addition, the circumstances presented here involve a decision to terminate a type of benefits previously approved. "In determining whether an insurer has properly terminated benefits that it initially undertook to pay out, it is important to focus on the events that occurred between the conclusion that benefits were owing and the decision to terminate them." McOsker v. Paul Revere Life Insurance Co., 279 F.3d 586, 590 (8th Cir.2002). See also Walke v. Group Long Term Disability Insurance, 256 F.3d 835, 840 (8th Cir. 2001) ["Nothing in the claims record justified Reliance's decision that a change of circumstances warranted termination of the benefits it initially granted."].
Applying these standards, the Court is persuaded that neither the initial October 3, 2000 decision to terminate benefits after June 1, 2000, nor the March 28, 2001 decision affirming the termination of benefits, is supported by substantial evidence or a reasonable explanation. The decision to terminate long term disability benefits was explained thusly in Reliance's October 3, 2000 letter:
In order to evaluate the claim for consideration of benefits from June 1, 2000, we have reviewed medical information submitted on your behalf by Dr. Canale and Therapist Ms. Josephine Kelly. The visit to Dr. Canale on May 19, 2000 indicates some ongoing difficulties, however, these difficulties did not change his recommended return to work date of June 1, 2000. According to the information provided you did not return to work and did not see Dr. Canale until July 31, 2000. The June 12, 2000 visit with Ms. Josephine Kelly documents a Global Assessment of Functions of 75, which would support work function, also the medical states that you were undecided about returning to work.
(RSL 31). The Court considers each of the supporting reasons given in turn.
Reliance first suggests that Dr. Canale released plaintiff to work as of June 1, 2000. By this point in time, however, Reliance had received the July 26, 2000 fax from Dr. Canale's office advising them that he had "ordered [plaintiff] off work until Aug. 1" and that even that date might need to be extended (RSL 198). To the extent the unsigned fax memo was deemed inadequate, the same notation was made in Dr. Canale's progress notes which had been provided to Reliance (RSL 175). The suggestion that Dr. Canale believed plaintiff fit to return to work as of June 1, 2000 approaches disingenuous, given Dr. Canale's repeated indications to the contrary in the most recent reports and records then provided to Reliance by Dr. Canale: "unable to work" dated August 15, 2000 (RSL 187); anticipated return to work date "unknown" dated August 15, 2000 (RSL 188); July 31, 2000 progress notes stating "he is unable to go back to work" (RSL 175).
Reliance references the fact that, after May 19, plaintiff next saw Dr. Canale on *964 July 31, presumably implicitly suggesting that the length of that interval belies a disabling illness. The records produced to Reliance demonstrated that in the same approximate time frame plaintiff had seen psychologist Kelly on at least the following occasions: May 17, June 12, August 1, and August 23. Reliance's proffered rationale failed to explain why plaintiffs visits to Canale, his more frequent therapy appointments with Kelly, and his documented continued use of psychiatric medications prescribed by Canale, were in combination inconsistent with the conclusion of both his treaters that he had a disabling depression. Furthermore, the Eighth Circuit has suggested that an insurance company's opinion that doctor's visits were too infrequent to support disability "is not a valid basis for terminating benefits." Walke, 256 F.3d at 841.[5],[6]
Reliance's next basis for its termination decision is that "[t]he June 12, 2000 visit with Ms. Josephine Kelly documents a Global Assessment of functions of 75, which would support work function" (RSL 31). The statement does not appear to be entirely factually accurate. Kelly's progress notes for June 12 do not reference a GAF score. In Kelly's undated report completed after plaintiffs August 1 visit, Kelly circles the range of 70 to 80 on a chart pertaining to GAF score. The basis for Reliance's treating the score as a "75" and linking it to the earlier June 12 visit are unclear at best. In addition, although a GAF in the 70 to 80 range might support work function, in the same report Kelly indicates an anticipated return to work date is "vague," suggesting that in her opinion plaintiffs condition does not permit him to resume work. Kelly's most recent progress notes in Reliance's file prior to its termination decision are those of August 23, indicating that plaintiff feels overwhelmed, is very depressed, is experiencing crying and horrible nightmares, and has recently changed medications in hopes that his symptoms will improve (RSL 170). The overall content of Kelly's records at this point in time does not reasonably support defendant's reliance on the GAF score alone to conclude that plaintiff is not disabled from his occupation.
The final basis proffered for the termination decision in Reliance's October 3 letter is that "the medical states that you were undecided about returning to work" (RSL 31). This refers to therapist Kelly's June 12 progress notes indicating that plaintiff was "`obsessing' over trying to decide about work" and "still struggling [with] work decision" (RSL 168). Reliance's interpretation of these comments does not reasonably support a determination that plaintiff was not disabled. Any person off work for a mental or physical injury or illness must, in addition to the opinions of his treaters, give his own consideration to the issue of his capability of performing his job. This may have particularly been the case in plaintiffs circumstances, involving a responsible management position and his particular illness affecting his ability to handle stress and anxiety. To construe Kelly's notes as indicating that plaintiff was in fact well and that his return to work was only a personal decision is not rationally supportable, particularly in the context of the broader medical record.
*965 For all the foregoing reasons, the Court finds defendant's October 3, 2000 decision to terminate plaintiffs benefits to be arbitrary and capricious. The four-pronged rationale stated in support of the decision is not supported by substantial evidence, particularly as to the pertinent determination that circumstances had sufficiently changed since Reliance's initial determination that plaintiff was totally disabled by his depression. The Court also notes that despite Reliance's quotation of the disability standard from its policy, Reliance has never offered, and does not appear to have attempted, any reasoned consideration of the effect of plaintiffs particular mental illness on his ability to "perform the material duties" of his occupation as a Vice President of Operations, as would be appropriate to a determination to terminate benefits.
The Court next separately considers Reliance's March 28, 2001 decision rejecting plaintiffs appeal and affirming the termination of benefits. Two pages of the decision letter are devoted to an explanation, irrelevant to our purposes, of the conclusion that plaintiffs physical complaints are not disabling. The first reason Reliance gives for rejecting plaintiffs claim of mental disability is therapist Kelly's initial GAF score of "70." First, as before, Reliance shades the record. Kelly's initial score was not 70, but, a range of 61 to 70 (RSL 270).[7] Second, Reliance was aware of this score in its files as of late April or early May, but nonetheless granted plaintiff benefits in its initial determination letter dated June 6. Data already in the record when benefits are granted cannot reasonably support the later termination of benefits. Thirdly, again the overall context of Kelly's report in which that GAF score is given does not suggest an ability to return to work. For example, Kelly indicated that plaintiff had marked if not extreme impairment in four defined areas of functioning, and Kelly stated an inability to determine when plaintiff might be anticipated to return to work (RSL 271).
Next Reliance cites Kelly's later report of an even higher GAF score (again referring to it as "75" rather than the range of 70 to 80) and rejects Kelly's attempt to retroactively reduce the score to 50. The Court's views concerning the "75" GAF score, even if not later recanted by the therapist who assigned it, have been earlier explained in the context of the October 3 decision, and need not be repeated here. See infra pp. 964.
Next Reliance in effect rejects the entirety of Dr. Canale's opinions, on the rationale that he treated plaintiff less often than Kelly, that he treated plaintiff so seldom as to suggest plaintiffs condition was not disabling, and that Dr. Canale's letter referencing a three-year duration of disability forfeited his professional credibility. Reliance's conclusions based on the relative frequency of plaintiffs visits to Dr. Canale have earlier been rejected by this Court. See infra p. 964. Even if Kelly's opinions are given greater weight than Canale's, the record before Reliance at the time it decided the appeal clearly demonstrated and supported Kelly's own conclusion that plaintiff remained disabled by his depression. Although Dr. Canale's willingness to make the statement about a three-year duration may have been professionally ill-advised, the explanation that it was done for the sake of plaintiffs mortgage company does not appear reasonably to warrant the wholesale rejection of all of *966 Dr. Canale's preceding professional opinions concerning plaintiff.
Finally, to support its decision on appeal, defendant relies upon the opinion of Dr. Fenichel. As indicated earlier, Dr. Fenichel, a psychiatrist, reviewed Reliance's file and opined that the records did not substantiate plaintiffs disability claim. Dr. Fenichel did not examine plaintiff. Dr. Fenichel's report offers six reasons for her conclusion, several of which overlap reasons separately stated by Reliance. Her broad statement that there is no "documentation" in Kelly's or Canale's records suggesting that plaintiff is incapable of functioning in a work setting is at odds with Kelly's and Canale's stated conclusions that plaintiff was not yet able to return to work and their assessments at various times of plaintiffs marked impairment in various types of functioning necessary for his occupation.
Next Fenichel states that the medical records do not provide examples of job difficulties or explain why plaintiff found his job unduly stressful. The relevance of these issues to the medical diagnosis of major depression is unclear, and may suggest that Fenichel was confusing a determination of disability under the terms of the insurance policy with the issue of reasonable accommodation of a disability under the Americans with Disabilities Act. Fenichel next observes that Dr. Canale's determination that plaintiff would remain disabled for three years is not explained. Although true, the observation has no bearing on the issue of plaintiffs current disability status. As earlier stated, the singular questionable opinion stated by Dr. Canale, admittedly for another purpose, does not reasonably support the rejection of his entire contribution to plaintiffs medical record.
Fenichel's expectation that an individual with disabling depression would see his psychiatrist more often than six times between February and December lacks weight and persuasive value for the same reasons as earlier expressed with respect to Reliance. See infra p. 964. Next Fenichel cites an apparent lack of coordination between the treating psychiatrist and psychologist. Even assuming that more coordination should have occurred, the fact hardly supports a conclusion that plaintiff was not seriously ill, as opposed to a conclusion concerning the quality and effectiveness of his treatment.
Finally, Fenichel critiques Kelly's retroactive change to the GAF score, opining that the table Kelly completed concerning plaintiffs abilities is not compatible with a GAF of 50. This reasoning echoes that separately expressed by Reliance, and is subject to the same criticism, namely that it unreasonably takes out of context one factor in Kelly's overall treatment and assessment record, which otherwise supports a finding of disability, particularly when considered in combination with Dr. Canale's records.
For all these reasons, the Court finds the final decision of Reliance rejecting plaintiffs appeal to be arbitrary and capricious, that is, not supported by substantial evidence or a reasonable explanation. Although the rationale offered in the March 28 appeal determination was significantly more detailed than that offered in the initial October 3 termination letter, the reasons given are no more supported by the medical evidence of record, and fail to cite evidence of improvement or a change in status substantial enough to reverse Reliance's earlier conclusion that benefits were owing.
The Court will therefore grant plaintiffs motion for summary judgment and deny defendant's motion for summary judgment. Plaintiff does not dispute that a 24-month limitation applied to his long term disability benefits, such that benefits were maximally payable only to March 17, 2002. *967 Plaintiff received benefits for the period to June 1, 2000. The Court will award the benefits owing for the balance of the benefit eligibility.
As plaintiff acknowledges, his disability benefits under the ERISA plan were subject to reduction by the amount of any Social Security disability benefits he received. The evidence indicates that the base amount of plaintiffs monthly long term disability benefit under the ERISA

-------------------------------------------------------------------------------
June 2000 Base benefit $4,950.01
through SS benefit - 1,559.00
 -----------------------------
Nov. 2000 Net monthly x 6 months = $20,346.06
 ERISA benefit $3,391.01
-------------------------------------------------------------------------------
Dec. 2000 Base benefit $4,950.01
 SS benefit - 1,613.00 x 1 month = $ 3,337.01
 -----------------------------
 Net monthly
 ERISA benefit $3,337.01
-------------------------------------------------------------------------------
Jan. 2001 Base benefit $4,950.01
through SS benefit - 1,641.00
 -----------------------------
March 17, 2002 Net monthly x 14.5 months = $47,980.65
 ERISA benefit $3,309.01
 Total = $71,663.72
-------------------------------------------------------------------------------

Accordingly,
IT IS HEREBY ORDERED that plaintiffs motion for summary judgment [Doc. # 22] is granted and defendant's motion for summary judgment [Doc. # 22] is denied.

JUDGMENT
Pursuant to the order entered herein this day,
IT IS HEREBY ORDERED, ADJUDGED and DECREED that summary judgment is entered in favor of plaintiff and against defendant in the amount of $71,663.72, plus costs and such post-judgment interest as is allowed by law. plan is $4950.01 (RSL 72). Defendant was found to be entitled to Social Security disability benefits beginning June 2000. Pltf. Exh. B, p. 1 of SSA Letter dated August 18, 2001. At two points, the amount of plaintiffs Social Security benefits increased. Id. at p. 2. These increases would concomitantly reduce the amount of plaintiffs monthly benefit under the ERISA plan. Based on this data of record, the Court compt-judgment interest as is allowed by law.
NOTES
[1] Although plaintiff initially referenced various physical complaints as well, plaintiff seeks judicial review only of his entitlement to disability benefits on the basis of depression and anxiety disorder.
[2] The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.
[3] The Court's citations to the record in the format "RSL #" are to the Bates-stamped pages of Reliance's submission in support of its summary judgment motion.
[4] This letter references an attending physician indicating a return to work date in May, but the Court is unaware of any reference to a May return date in the record.
[5] In Walke, the Eighth Circuit affirmed summary judgment against the same insurance company as in this case, Reliance, finding that, as here, "[n]othing in the claims record justified Reliance's decision that a change of circumstances warranted termination of the benefits it initially granted." Id. at 840.
[6] As a practical matter, the frequency of doctor's visits may be dictated more by health insurance coverage than by need.
[7] In fact, depending on one's interpretation of Kelly's handwritten notation, she may have been indicating not the tenpoint range, but a particular score of 61, the bottom point of the range.